# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 16, 2013 Session

## GREGORY KEITH JARNIGAN v. GINGER NICOLE JARNIGAN

**Direct Appeal from the General Sessions Court for McNairy County**
**No. 11DV115     Van McMahan, Judge**

---

**No. W2013-00300-COA-R3-CV - Filed November 4, 2013**

---

In a post-divorce action, Mother filed a motion to set aside the permanent parenting plan that had been incorporated into the parties' final decree of divorce. The trial court granted Mother's motion for relief based on a mutual mistake of the parties. Additionally, the trial court amended the parenting plan to reflect parties' original agreement and ordered Father to pay child support. Father appealed. After reviewing the record, we affirm in part, vacate in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in part, Vacated in part & Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Curtis F. Hopper, Savannah, Tennessee, for the appellant, Gregory Keith Jarnigan.

Terry Lynn Wood, Adamsville, Tennessee, for the appellee, Ginger Nicole Jarnigan.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

Ginger Nicole Jarnigan ("Mother") and Gregory Keith Jarnigan ("Father") were married on August 16, 1997. During the marriage the parties had three minor children–sons born in 1999, 2003, and 2005. In January 2012, the parties were divorced by a decree in the General Sessions Court of McNairy County.

The parties' final decree of divorce adopted and incorporated a marital dissolution

agreement[1] and permanent parenting plan each signed by both of the parties. Prior to the divorce, Mother and Father negotiated the terms of the parenting plan and came to an agreement on how to divide custody of the children. During the negotiations, Mother chose not to be represented by counsel, though Father hired an attorney. According to Mother's testimony, the parties agreed that Mother would be the children's primary residential parent and that Father would have visitation with the children two afternoons each week and on alternating weekends. The parties did not reach an agreement on Father's obligation to pay child support. Mother claims she filled in the agreed upon terms on a blank form parenting plan form she got from Father's attorney. Mother testified that in October 2011, she and Father each signed the last page of the written plan, and Mother left it with Father's attorney. Mother testified that she never signed a typed copy of the parenting plan.

On January 12, 2012, the General Sessions Court of McNairy County entered a final decree of divorce, which incorporated a typed parenting plan. The last page of the typed parenting plan was signed by each of the parties and dated October 7, 2011. Father testified that he was present when Mother signed the typed parenting plan and that she appeared to have read it. Mother testified that sometime after the divorce decree was entered, she realized that the parenting plan incorporated into the decree was not consistent with the terms of the parties' original agreement.

The typed parenting plan, incorporated into the parties' final decree of divorce, designated Father as the primary residential parent. The plan stated that each year, the children were to spend 182 days with Mother and 183 days with Father in accordance with the day-to-day schedule. However, the day-to-day schedule provided that Mother would only have responsibility for the children two afternoons each week and on alternating weekends.[2] Neither party disputes that there is an obvious inconsistency in the parenting plan between the day-to-day schedule and the total number of days per year designated to each parent.

At trial, Father admitted that the parties did not follow the parenting plan immediately after the execution of the divorce decree. He acknowledged that there was also a verbal agreement between the parties to "help each other out." Father testified that his attorney's secretary told the parties that they could work things out between themselves, regardless of what was written in the actual parenting plan. For a short time, the parties did just that.

---

[1]Originally there was an issue on appeal regarding a provision of the parties' marital dissolution agreement. At oral argument, Appellant's counsel notified this Court that the issue had become moot and was withdrawn. We therefore will not address it in our opinion.

[2]Holidays and most school vacations were evenly divided between the parents. The section governing summer vacation was left blank.

Immediately following the divorce, Mother kept the children during the week because Father's work schedule required him to be at work before 5:00 A.M. It appears, however, that Father understood the arrangement to be temporary. After getting his work schedule changed, Father sought to enforce the court's parenting plan. Father testified that when he tried to assert his parental rights as they were stated in the court's parenting plan, Mother threatened to take him to court.

It did not take long for Mother to follow through on her threat. On March 5, 2012, Mother filed a motion for relief from judgment pursuant to Tenn. R. Civ. P. 60.02 in the General Sessions Court of McNairy County. Mother alleged that the parenting plan incorporated into the divorce decree, which was prepared by Father's lawyer, misrepresented Father's allocation of parenting time so that he would not be obligated to pay child support. Mother asked the court to set aside the parenting plan.

On August 22, 2012, after a hearing on the matter, the trial court granted Mother's request for relief from the divorce decree and parenting plan under Tenn. R. Civ. P. 60.02. The trial court found that the parenting plan incorporated into the divorce decree contained a mutual mistake in the residential parenting schedule. The court amended the parenting plan to designate Mother as the primary residential parent, and provide that Father would have visitation with the children two afternoons each week and on alternating weekends. The trial court reserved ruling on child support issues.

Subsequently, on November 30, 2012, following a hearing on child support, the trial court ordered Father to pay $750 per month in child support. The court also ordered Father to pay $2,250 in retroactive child support dating back to its August 2012 order. Thereafter, Father timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Father submits the following issues for review, as restated:

(1)     Whether the trial court erred by granting Mother's request for relief from judgment.

(2)     Whether the trial court erred by allowing Mother to testify about prior agreements of the parties in violation of the parol evidence rule.

(3)     Whether the trial court erred by reforming the parties' parenting plan without conducting a hearing regarding the children's best interests.

Mother submits the following issues for review, as restated:

(1) Whether the trial court erred by not allowing Mother to testify about statements made by Father's lawyer.

(2) Whether the trial court erred by not requiring Father to pay retroactive child support dating back to the inception of the parenting plan.

(3) Whether the trial court erred by not requiring Father to pay Mother's discretionary costs.

## III. STANDARD OF REVIEW

The decision whether or not to grant relief from a judgment under Tenn. R. Civ. P. 60.02 is left to the discretion of the trial judge. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn 2010). On appeal, our inquiry is whether the trial court abused its discretion in granting or denying relief. *Id.* "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)(citations omitted). When reviewing a trial court's discretionary decisions, we accord the decision a presumption of correctness and review the evidence in the light most favorable to the decision. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

## IV. DISCUSSION

We begin our analysis by distinguishing the separate actions of the trial court in this case. First, the trial court granted Mother's motion for relief from judgment after finding that the parenting plan incorporated into the parties' divorce decree contained a mutual mistake. Second, the trial court amended the parenting plan to designate Mother the children's primary residential parent and provide that Father would be responsible for the children two afternoons each week and on alternating weekends. Third, the trial court calculated Father's child support obligation based on its amended parenting plan. We will address each action of the trial court separately.

### A. Rule 60.02 Relief

First, we address the trial court's decision to set aside the parenting plan. The trial court granted Mother's motion for relief from judgment pursuant to Tenn. R. Civ. P. 60.02. Rule 60.02(1) provides that a court may relieve a party from a final order for "mistake,

inadvertence, surprise or excusable neglect." Tenn. R. Civ. P. 60.02. The general purpose of Rule 60.02 relief is to alleviate the effect of an oppressive or onerous judgment. *Henderson*, 318 S.W.3d at 336. A party seeking relief from a judgment under Rule 60.02 must show by clear and convincing evidence that such relief is warranted. *Furlough v. Spherion Atlantic Workforce, LLC*, 397 S.W.3d 114, 129 (Tenn. 2013).

We think it is obvious from the face of the parties' parenting plan in this case that Rule 60.02 relief was warranted. The parenting plan contained two clearly inconsistent provisions. The residential schedule in the parenting plan initially provided that Father would be responsible for the children 183 days each year, while Mother would be responsible for them on the other 182 days. Then, in the very next provision, the day-to-day schedule stated that Mother would only be responsible for the children two afternoons each week and on alternating weekends. The two provisions cannot be reconciled. If the parties were to abide by the day-to-day schedule, they would be forced to disregard the provision allotting Mother 182 days with the children. Conversely, in order for Mother to get the children for 182 days in a year, the parties would be forced to disregard the day-to-day parenting schedule. We think that the discrepancy between the provisions is clear and convincing evidence of a mistake. Mother and Father would not have purposefully consented to, and the court would not have purposefully ordered, a parenting plan that was impossible for the parties to comply with. We therefore affirm the trial court's decision to set the parenting plan aside.

We note that Mother and Father each raised an issue on this matter regarding the admissibility of certain testimony at trial. It is our view that because the parenting plan was inconsistent on its face, we do not need to address testimonial evidence to uphold the trial court's decision to set it aside. Those issues are pretermitted.

### B. Modification of the Parenting Plan

We next turn to the trial court's decision to modify the parenting plan to reflect Mother's account of the parties' original agreement. After granting Mother relief from the parenting plan, the trial court ordered that the plan be amended to reflect Mother's account of what the parties originally agreed to. The amended parenting plan designated Mother the primary residential parent and provided Father with visitation pursuant to a day-to-day schedule. Father contends that in doing so, the trial court erred because it cannot reform the parties' parenting plan without making findings regarding the best interests of the children. Mother contends that the trial court heard more than adequate evidence that the changes to the parties' parenting plan were in the best interests of the children.

"Regardless of the parents' interest in a custody arrangement, the overriding

responsibility of the court is to approve or order a parenting plan that promotes the best interest and welfare of (the children)." *Burden v. Burden*, 250 S.W.3d 899, 909 (Tenn. Ct. App. 2007) (quoting *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, (Tenn. Ct. App. Oct. 15, 2004)). "[T]he interests of the parents are secondary to those of the children." *Id.* (quoting *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)). Therefore, before the trial court can amend or modify a parenting plan, it must determine whether the change sought is in the child's best interest in light of the factors enumerated in Tennessee Code Annotated section 36-6-106. *In re M.J.H.*, 196 S.W.3d 731, 745 (Tenn. Ct. App. 2005). That section provides that the trial court must order a custody arrangement in which both parents will enjoy the maximum participation in the child's life consistent with the following factors:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

. . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1)-(5), (9)(10) (2010).

Contrary to Mother's claim, there is nothing in the record to indicate that the trial court considered any of the factors required by Tennessee Code Annotated section 36-6-106.

Rather, the court simply modified the parenting plan to reflect the parties' original agreement according to Mother's testimony. The court should have held a subsequent hearing regarding the best interests of the children before modifying the parties' parenting plan. We therefore vacate the trial court's amended parenting plan and remand so that the court may consider the children's best interests.

### C. Child Support

After it amended the parenting plan, the trial court conducted a hearing on the child support obligations of the parties. On November 30, 2012, the trial court ordered that Father would pay regular child support of $750 per month, and awarded Mother $2,250 in retroactive child support dating back August 22, 2012, the date that the court amended the parenting plan. Mother argues that the court should have ordered retroactive child support dating back to either the inception of the parties original parenting plan in October 2011, or to the date that Mother filed her motion for relief from judgment in March 2011. Unfortunately, in the absence of a valid parenting plan, we are not able to address child support issues. We remand the issue of child support to the trial court for redetermination following the entry of a new parenting plan in accordance with the children's best interests.

### D. Attorney Fees

Finally, we address Mother's contention that she should have been awarded attorney fees and discretionary costs. Attorney fees in actions concerning the adjudication of child custody are recoverable in the discretion of the court. Tenn. Code Ann. § 36-5-103(c). Mother contends that an award of attorney fees is warranted because Father's attempt to avoid paying child support caused the present litigation. The trial court's ruling, however, was that the existing parenting plan contained a mutual mistake; the court did not purport to assess the majority of the blame to either party. Upon review of the record, we cannot say that the trial court abused its discretion when it declined to award attorney's fees and discretionary costs to Mother.

### V. CONCLUSION

For the foregoing reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed equally to the Appellant, Gregory Keith Jarnigan, and his surety, and the Appellee, Ginger Nicole Jarnigan, for all of which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE